JOHN B. HOXSIE and another *vs.* EMPIRE LUMBER COMPANY.

November 1, 1889.

**Accord Executory.**—An accord executory is no defence.

**Damages—Conversion of Timber.**—*King* v. *Merriman*, 38 Minn. 47, followed as to the measure of damages for the conversion of timber unlawfully cut and removed from land.

**Same—Against Innocent Purchaser from Wilful Trespasser.**—Where the party who cut the timber, being a wilful trespasser, contracts for its sale to an innocent purchaser, to be delivered at a specified place, at which it is subsequently delivered, in an action for conversion against the purchaser, the measure of damages is the value of the timber at the time and place of its delivery to him, and not at the place where it was situated when the contract was made.

**Same—Good Faith of Trespasser—Pleading.**—That the trespass was not wilful, but was committed under an honest and reasonable belief in the right to do the act, being merely matter in mitigation of damages, need not be pleaded.

**Evidence—Letter Purporting to be Reply to Another—Preliminary Proof.**—A letter received by A, purporting to have been written by or for B in reply to a letter previously sent by A to B, is admissible in evidence against B, without proof of the handwriting, or of the authority of the person by whom it was written in behalf of B.

**Witness—Competency to Testify to Market Values.**—A person whose business is such that, by commercial reports or other like means, he is familiar with the market value of an article which is the common subject of sale, is competent to testify as to its value, although he has no personal knowledge of any particular sales.

Appeal by defendant from an order of the district court for Ramsey county, *Kelly*, J., presiding, refusing a new trial after a verdict of $679.72 for plaintiffs.

*C. P. Gregory*, for appellant.

*John B. & W. H. Sanborn*, for respondents.

MITCHELL, J.   The cause of action alleged in the complaint is the unlawful conversion by defendant, in August, 1888, of a quantity of saw-logs, the property of plaintiffs, and which, by way of descrip-

tion, are alleged to have been cut and removed during the logging season of 1887–88, from a certain tract of land in Pine county. It is rather difficult to tell what issues were intended to be tendered by the answer. It starts out by alleging that the logs in question were cut and removed from the land described in the complaint by one O'Brien, from whom defendant bought in good faith, without notice of the claim or right of any one else. The answer then seems to attempt to set up two defences, the first of which is that, after the logs were cut, an arrangement was made between O'Brien and a duly-authorized agent of plaintiffs, by which it was agreed that O'Brien should settle for the logs at a certain price per thousand feet. This amounted merely to an accord executory, and it is elementary law that this is no defence. There must be a satisfaction as well as an accord. The accord agreement must be fully executed, and the thing to be taken must have been received and accepted in satisfaction, in order to constitute a bar to a recovery. The answer then attempts to set up by way of defence that one Rice, and not the plaintiffs, is the real party in interest, alleging that he is the real owner, and plaintiffs only the "nominal" owners of the land. It is not clear what this means; but, construed in the light of other allegations in the answer, and the admission of defendant on the trial that the title was in the plaintiffs, the most favorable construction for defendant that can be put upon it is that the legal title of the land was in the plaintiffs, but that Rice was the equitable owner, or had some equitable interest in it. This was a mere legal conclusion, and, in the absence of any allegation of fact to support it, amounted to nothing. Moreover, as against third persons who were mere trespassers, the owner of the legal title could maintain an action for the conversion of timber cut and removed from the land. The result is that the answer contains no defence, and, as the court below very properly instructed the jury, the whole case came down to a question of the amount or measure of plaintiffs' damages. This disposes of the majority of defendant's assignments of error.

As it was conceded that defendant bought the logs of O'Brien in good faith, the only question left, bearing upon the proper measure of damages, was whether O'Brien was a wilful trespasser. If he was,

then, under the rules adopted by this court in such cases, the measure of plaintiffs' damages would be the value of the logs at the time and place they were sold and delivered by him to defendant. If, on the other hand, O'Brien was an unintentional or mistaken trespasser, honestly and reasonably believing that he had authority to cut and remove the logs, then the measure of plaintiffs' damages would be merely the value of the standing timber. *Whitney* v. *Huntington,* 37 Minn. 197, (33 N. W. Rep. 561;) *King* v. *Merriman,* 38 Minn. 47, (35 N. W. Rep. 570.)

Upon the trial defendant offered evidence to show that O'Brien was not a wilful trespasser. Some of these offers were clearly objectionable, because including other matters that were incompetent for any purpose under the pleadings. Other offers, however, were not subject to this objection; as, for example, that O'Brien entered the land and cut the logs under the authority of Rice, who assumed to act as plaintiffs' agent, and entertaining the belief, and having reasonable grounds for the belief, that Rice in fact had such authority. This evidence was all excluded. It does not appear on what ground it was excluded, but we infer that it was either that the answer admitted that O'Brien was a wilful trespasser, or that it was not pleaded that he was not. The answer is loosely drawn, and rather calculated to mislead, but we find nothing in it that could fairly be construed as an admission that O'Brien's act was a wilful trespass. If not, we do not think it was necessary to plead that he acted in good faith. This was a matter that went merely to the measure of damages. It was not defensive matter, but solely in mitigation. The general rule of pleading is that matter in mitigation of damages, at least when it could not be used as a bar of plaintiff's cause of action, need not be pleaded. Indeed, in actions like the present, the complaint need not, and usually does not, (as it did not in this case,) tender any issue on any such question. Of course, if it appeared that the act of cutting was a trespass, the presumption, in the absence of any contrary showing, would be that it was wilful, and the burden would be on the trespasser to show that it was not. But this is wholly a matter of proof, and not of pleading. For the error in excluding this evidence a new trial must be granted; but,

with reference to another trial, it is expedient to consider two or three other questions.

The letter received by plaintiffs purporting to have been written for defendant, and sent in reply to a letter previously sent by plaintiffs to defendant, was properly received in evidence. The question is fully covered by the case of *Melby* v. *Osborne*, 33 Minn. 492, (24 N. W. Rep. 253.)

We also think that the witness Dozy showed himself competent to testify as to the market value of saw-logs at Stillwater, and that his testimony on that question was properly admitted. The contention of defendant seems to be that, even in the case of a commodity which is a common subject of purchase and sale in the market, a witness can only testify as to market value from actual personal knowledge of sales which he himself made or saw made. This is not correct. Value in a business sense consists largely of the opinions of persons familiar with the market, and these opinions are largely made up of what is said and reported by others. Hence, if a person shows that his business is such that, by commercial reports or other means of like nature, he is familiar with the current market prices of an article, he is competent to testify on the subject, although he may not have actual personal knowledge of any particular sales. *Brackett* v. *Edgerton*, 14 Minn. 134, (174;) Whart. Ev. §§ 255, 449.

It appeared from the evidence that O'Brien contracted for the sale of these logs to be delivered to defendant in the boom at Stillwater, and that there was where they were in fact delivered pursuant to this contract. It also appeared, however, that at the time of making this contract the logs were "on the bank," up in Pine county. On this state of facts, assuming that O'Brien was a wilful trespasser, the court below was right in holding that the measure of damages was the value of the logs in the boom at Stillwater, and not on the bank up in Pine county. Under the contract the place of delivery was the place where the sale and purchase were completed.

Order reversed.